**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOAO BOCK TRANSACTION
SYSTEMS, LLC,

       Plaintiff,

v.                                   Case No. 3:13-cv-223-J-32JRK

FIDELITY NATIONAL
INFORMATION SERVICES, INC.,

       Defendant.

_____

## <u>ORDER GRANTING SUMMARY JUDGMENT OF INVALIDITY</u>

After some fits and starts, this patent infringement case is before the Court to determine whether the two patents at issue—both involving "an apparatus and method for providing financial transaction authorization, notification, and/or security"—are invalid because they are drawn to patent-ineligible subject matter. Applying the Supreme Court's teachings in <u>Mayo Collaborative Servs. v. Prometheus Labs., Inc.</u>, 132 S. Ct. 1289 (2012) and <u>Alice Corp. Pty. Ltd. v. CLS Bank International</u>, 134 S. Ct. 2347 (2014), the Court holds that the patents are invalid.

The parties have fully briefed Defendant Fidelity National Information Services, Inc.'s motions for summary judgment and for sanctions (including Plaintiff Joao Bock Transaction Systems, Inc.'s motion to strike certain evidence submitted in support of summary judgment) and the construction of certain disputed claim terms.

(Docs. 122, 124, 128, 129, 130, 134, 137, 138, 140, 149, 151, 152, 160.[1]) The Court held

a hearing on July 24, 2015, the record of which is incorporated herein. (Doc. 166.)

## I.   THE PATENTS-IN-SUIT

Joao Bock initially asserted in its complaint that Fidelity had infringed claims

from just one patent, U.S. Patent No. 7,096,003 (the '003 Patent). (Doc. 1.) In its

answer and counterclaim, Fidelity responded that not only had it not infringed that

patent, but the '003 Patent and U.S. Patent No. 6,047,270 (the '270 Patent), which

Joao Bock had asserted against Fidelity's customers in other cases, were both invalid.

(Doc. 11.) In reply to the counterclaim, Joao Bock defended the validity of its patents

and, in a counter-counterclaim, alleged that Fidelity was in fact infringing upon the

'270 Patent as well. (Doc. 12.) At the Court's direction, the parties simplified the

pleadings so that the alleged invalidity and infringement of both patents are now

contained in one amended complaint (Doc. 65), one answer and counterclaim (Doc. 72),

and one reply to the counterclaim (Doc. 73).

The '270 Patent, entitled "Apparatus and Method for Providing Account

Security," was issued on April 4, 2000 from an application filed on August 25, 1997,

which in turn claims priority to an application first filed on August 8, 1996. '270

Patent, at [22], [45], [55], [63]. The '270 Patent generally discloses "an apparatus and

method for providing financial transaction authorization, notification, and/or security"

for a variety of accounts that enable the accountholder to monitor and/or authorize,

---

[1] The parties also filed thousands of pages of exhibits in support of their briefs, a number of which were filed under seal. This Order makes no mention of any sealed or otherwise confidential matters.

often in real-time, the activity on her account through interaction between, for example, her personal communication device and a bank's central processing computer. Id. col. 4 ll. 33-35; col. 8 ll. 57-67; col. 9 ll. 1-15. The invention does this by allowing for placing restrictions on the account, providing notifications, and/or providing transaction records for the account.

The '003 Patent, entitled "Transaction Security Apparatus," was issued on April 22, 2006 from an application filed on September 10, 2001, claiming priority to the same August 8, 1996 application as the '270 Patent.[2] '003 Patent, at [22], [45], [54], [63]. Though the '003 Patent contains a very similar specification as the '270 Patent and generally discloses the same invention, the relevant distinction between the two is that the '003 Patent specifically teaches using the Internet, the World Wide Web, email, and wireless devices to facilitate the monitoring and/or authorization described in the '270 Patent.

At the Court's direction (Doc. 115), Joao Bock has limited the patent claims asserted to twenty-five: claims 3, 20, 21, 28, 49, and 51 of the '270 Patent and claims 101, 104, 117, 135, 138, 148, 157, 180, 232, 236, 240, 244, 250, 252, 307, 313, 336, 345, and 346 of the '003 Patent (collectively, "Asserted Claims") (Doc. 130). These claims

---

[2] The '270 Patent and the '003 Patent are part of the same family as a patent not asserted here, U.S. Patent No. 6,529,725 (the '725 Patent). The '725 Patent issued on March 4, 2003 from an application filed on October 9, 1998, but claimed priority to the same August 8, 1996 application as the '270 and '003 Patents. '725 Patent, at [22], [45], [63]. In fact, the '003 Patent is supposedly a continuation of the application that led to the '725 Patent. '725 Patent, at [63]. The '725 Patent claims a "Transaction Security Apparatus and Method" very similar to that claimed in the '270 Patent and the '003 Patent. '725 Patent, at [54], [57]; col. 3 ll. 66-67; col. 4 ll. 1-7.

are all dependent, so-called "apparatus" or "system" claims.[3]

The patents-in-suit have something of a litigation history. Together, the patents (or a related patent) have been the subject of at least thirty-three infringement actions (Doc. 134-2), though few of these actions have resulted in a ruling on the merits. One such ruling is of particular note.[4] On December 15, 2014, in <u>Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.</u> ("<u>Jack Henry</u>"), the District of Delaware granted summary judgment for the defendant and against Joao Bock, holding that each of the twelve claims from the '003 Patent Joao Bock asserted were invalid and, therefore, not infringed. Civ. No. 12-1138-SLR, 2014 WL 7149400, at *9 (D. Del. Dec. 15, 2014). As discussed in further detail below, the <u>Jack Henry</u> court determined that the claims asserted there were directed to subject matter ineligible for patent under 35 U.S.C. § 101. The court later entered judgment consistent with its memorandum opinion. Joao Bock's appeal is currently pending in the Federal Circuit.[5]

---

[3] For ease of reference, the Court will cite to claims simply by number unless further specificity is needed. The complete text of the Asserted Claims are set forth in an appendix to this Order, along with the text of the independent claims from which the Asserted Claims depend.

[4] The parties also reference other rulings from cases in California, New York, and Illinois, though they are not particularly useful in the context of this Order. It is worth adding that, prior to filing the instant case, Joao Bock filed in the Tampa Division of the Middle District of Florida a separate case against certain of Fidelity's customers. That case has been stayed pending the resolution of this case. <u>Joao Bock Transaction Systems, LLC v. USAmeriBank</u>, 8:11-cv-887-T-35TGW, Doc. 233.

[5] At the July 24, 2015 hearing, Joao Bock asked for the first time that the Court stay this matter pending resolution of the appeal in <u>Jack Henry</u>. The Court took the request under advisement. Upon due consideration, Joao Bock's <u>ore</u> <u>tenus</u> motion to stay is due to be denied.

## II.    FIDELITY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

Keying off the ruling in <u>Jack Henry</u>, Fidelity has moved for summary judgment on the ground that the Asserted Claims are drawn to ineligible subject matter and are therefore invalid.[6] (Doc. 124 at 6-18; Doc. 137 at 1-7.) Joao Bock contests both the reasoning and the applicability of the <u>Jack Henry</u> opinion, as well as that Fidelity has met its burden of proving that the subject matter of the Asserted Claims are not patent eligible. (Doc. 130 at 22-40.)

### A.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 911 F.2d 670, 672-73 (Fed. Cir. 1990). "[T]he ultimate question of patent validity is one of law," though factual determinations bear on the outcome. <u>Microsoft Corp. v. i4i Ltd.</u>, 131 S. Ct. 2238, 2242-43 (2011). "[P]atents are presumed to be valid and overcoming this presumption requires clear and convincing evidence." <u>Alcon Research Ltd. v. Barr Labs., Inc.</u>, 745 F.3d 1180, 1188 (Fed. Cir. 2014) (citing <u>Microsoft</u>, 131 S. Ct. at 2242).[7] "Stated another way, summary judgment is inappropriate if a trier of

---

[6] Though Fidelity also argues that the Asserted Claims are invalid under 35 U.S.C. §§ 102 and 103 (Doc. 124 at 18-30), patent eligibility has been described as a "threshold" inquiry, <u>Bilski v. Kappos</u>, 561 U.S. 593, 602 (2010). Thus, the Court focused the July 24 hearing on eligibility and advised the parties that, if necessary, it would convene another hearing to discuss Fidelity's other invalidity arguments.

[7] At least one member of the Federal Circuit has questioned whether any such presumption applies when the patent's eligibility is being challenged. <u>Ultramercial, Inc. v. Hulu, LLC</u>, 772 F.3d 709, 717, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring). This Court would still reach the conclusion set forth below, however, whether a

fact applying the clear and convincing standard could find for either party." Oney v. Ratcliff, 182 F.3d 893, 895 (Fed. Cir. 1999). As in all other cases, the party moving for summary judgment on a question of patent validity bears the burden, and "the district court is required to view the evidence presented in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of the nonmoving party." C.R. Bard, 911 F.2d at 672.

### B.   Claim Construction

Before turning to the substance of the parties' eligibility arguments, the Court considers the necessity of claim construction to the analysis. Construction of the scope and meaning of a patent's claims is a matter of law for the court and is generally the first step in a determination of invalidity or infringement, Key Pharm. v. Hercon Labs. Corp., 161 F.3d 709, 714 (Fed. Cir. 1998), because "'the claims of a patent define the invention to which the patentee is entitled the right to exclude,'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)); see Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). However, "[a]lthough the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (citing Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 714-15 (Fed. Cir. 2014)

presumption of eligibility applied or not.

and Bancorp Servs., L.L.C. v. Sun Life Assurance of Can. (U.S.), 687 F.3d 1266, 1273-74 (Fed. Cir. 2012)). In Content Extraction, the Federal Circuit held that, in the deciding a motion to dismiss on the grounds of patent-ineligibility, the district court had acted properly in not conducting its own claim construction, but construing the disputed claim terms in the manner most favorable to the non-movant and finding that the claims were nevertheless patent-ineligible. Id.

Fidelity's position as stated during oral argument is that claim construction is not necessary to the § 101 analysis here because the Court could adopt Joao Bock's proposed construction of the disputed terms and still rule in Fidelity's favor. Joao Bock agreed during the hearing that most of the claim construction disputes would not impact the eligibility analysis, with a few possible exceptions.

For purposes of its patent-eligibility inquiry only, the Court adopts Joao Bock's proposed construction of the disputed claim terms.[8] Doing so changes neither the Court's understanding of the basic character of the subject matter of the Asserted Claims nor the outcome of its analysis.

## C.     Patent Eligibility under 35 U.S.C. § 101

"Whoever invents or discovers any new and useful process, machine,

---

[8] Joao Bock's proposed constructions can be found in the parties' Joint Claim Construction Statement. (Doc. 147.) The Court's decision to adopt Joao Bock's proposals for purposes of this Order only includes those terms that the parties could not agree needed construction: "security," "transaction," and "limitation or restriction." Joao Bock also suggested during the hearing that two additional terms not submitted for construction might be important to a § 101 inquiry: "processor" and "real-time." Though Joao Bock has not submitted proposed constructions for these terms, even viewed in the manner most favorable to Joao Bock, these terms do not change the Court's eligibility analysis.

manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Section 101 addresses only whether the claimed invention is <u>eligible</u> to be patented; 35 U.S.C. §§ 102, 103, 112, and other sections of the patent code deal with issues of novelty, obviousness, and the description of the claimed invention that might affect its <u>patentability</u>. Though § 101 employs broad language, the Supreme Court has recognized that a patent may be invalid if it is drawn to certain exceptions from eligibility for "'laws of nature, natural phenomena, and abstract ideas.'" <u>Bilski v. Kappos</u>, 561 U.S. 593, 601 (2010) (quoting <u>Diamond v. Chakrabarty</u>, 44 U.S.C. 303, 309 (1980)). Fidelity contends that the patents-in-suit are drawn to an abstract idea and so are excepted from patent eligibility under § 101.

### 1.   *Alice Corp. Pty. Ltd. v. CLS Bank International*

Fidelity draws inspiration for its argument from the recent Supreme Court opinion in <u>Alice Corp. Pty. Ltd. v. CLS Bank International</u>, 134 S. Ct. 2347 (2014), which has started a wave of court activity on the patent-eligibility of abstract ideas. The respondent in <u>Alice</u> sought a declaration that certain claims from the petitioner's family of patents were invalid. <u>Id.</u> at 2353. The patents largely shared a specification of a computerized trading platform for conducting financial transactions in which a neutral third party settled the obligations between two parties to avoid the risk that one party would perform only for the other to be unable to pay. <u>Id.</u> at 2352-53. The district court ruled that petitioner's patent claims were not patent eligible under § 101 because they were directed to the abstract idea of using an intermediary to facilitate a transaction, only with the addition of a computer. <u>Id.</u> at 2353.

A divided panel of the Federal Circuit reversed, but then on rehearing en banc, the whole court affirmed the district court, though without producing a majority opinion. CLS Bank Int'l v. Alice Corp. Pty. Ltd, 717 F.3d 1269 (Fed. Cir. 2013). A majority of judges agreed to affirm the ineligibility of the so-called "method" and "computer-readable media" claims, but could not agree on the reasoning. Id. at 1273-74, 1312-13. The court was equally divided on the eligibility of the "systems" claims, so the district court's ruling that they were not eligible was also affirmed. Id. at 1273.

The Supreme Court apparently saw the case as more straightforward, unanimously holding that the claims at issue were not patent eligible because they were drawn to the abstract idea of intermediated settlement with generic computer implementation. 134 S. Ct. at 2352. The Court began with the language of § 101 and the exceptions for "laws of nature, natural phenomena, and abstract ideas." Id. at 2354. The exceptions exist to avoid complete pre-emption of these basic concepts by a patent while recognizing that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" Id. (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012)). Thus, courts must "tread carefully" to "distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." Id. (quoting Mayo, 132 S. Ct. at 1294, 1303).

To that end, the Court employed a two-part framework first set forth in Mayo: "First, we determine whether the claims at issue are directed to one of those patent

ineligible concepts. If so, we then ask, 'what else is there in the claims before us?'" Id. at 2355 (quoting Mayo, 132 S. Ct. at 1296-97). To answer the second question, the Court considered the elements of each claim individually and "as an ordered combination" to identify whether the patent claims an "'inventive concept'" that makes it more than just the ineligible concept. Id. (quoting Mayo, 132 S. Ct. at 1294).

The Court also reviewed prior precedent on abstract ideas, including Bilski v. Kappos, 561 U.S. 593 (2010). Bilski had held that a method for hedging financial risk reflected a fundamental economic principle taught in any finance class and so was not eligible. Id. at 609. The Alice Court concluded that the concept of intermediated settlement was similarly a basic economic idea. Alice, 134 S. Ct. at 2356-57. The category of ineligible abstract ideas is not limited to "preexisting, fundamental truths that exist in principle apart from any human action," but can include "method[s] of organizing human activity." Id. (quotations omitted). It took little effort for the Court to find that intermediated settlement fit that bill. Id. at 2357.

With that decided, the Court went searching for any added inventive value in the patents and found them wanting. To truly transform an abstract idea into something more, a patent must do more than state the idea and say, "apply it." Id. at 2357. "The introduction of a computer into the claims does not alter the analysis . . . ." Id. So claiming an abstract idea, even an algorithm or formula, implemented on a general purpose computer does not make the abstract idea patentable. Id. Nor can "'the prohibition against patenting abstract ideas . . . be circumvented by attempting to limit the use of the idea to a particular technological environment.'" Alice, 134 S.

Ct. at 2358 (quoting <u>Bilski</u>, 561 U.S. at 610-11). On the other hand, an improvement on an existing technological process by use of a computer may be patent-eligible. <u>Id.</u> But "wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'" <u>Id.</u> (quoting <u>Mayo</u>, 132 S. Ct. at 1297). Whether considered claim-element-by-claim-element or as a whole, the Court found petitioner's method of providing for intermediated settlement purely conventional, with the claimed computer performing generic computer functions that added nothing inventive. <u>Id.</u> at 2359.

The Court did not spare the asserted system and computer-readable media claims. <u>Id.</u> at 2360. The petitioner argued that the system claims recited "'specific hardware' configured to perform 'specific computerized functions,'" but the Court viewed the terms in the patent, like "data processing system," "communication controller," and "data storage unit," to be only the generic components in every computer. <u>Id.</u> Recitation of these elements therefore added no "meaningful limitation" to the abstract idea beyond the instruction that one should "use a computer." <u>Id.</u> Rather, the Court saw the system and media claims as "no different from the method claims in substance. The method claims recite the abstract idea on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." <u>Id.</u> The ticket to patent eligibility under § 101 is not clever drafting of a patent to recite system claims rather than method claims. <u>Id.</u> Thus, the systems and media claims were invalid for the same reasons as the method claims. <u>Id.</u>

As the parties here note, the claims of dozens of business method and apparatus patents, including claims in the '003 Patent, have been found invalid since <u>Alice</u>, while only a few have withstood eligibility challenges.[9] The Court will now see into which group the patents here fall.

## 2. **Abstract Idea**

Fidelity contends that the Asserted Claims "embody the abstract idea of **using account holder notifications or account limits to provide security for financial transactions and accounts**—a foundational idea of banking and commerce." (Doc. 124 at 7 (emphasis added).) Fidelity says banks and merchants have used both notifications and preset limits and authorizations to address unauthorized account activity for over a century, and simply directing that it be done on a generic computer or over the Internet adds nothing inventive that would make either the '270 Patent or the '003 Patent eligible. (<u>Id.</u> at 7-8.) Fidelity sees "little daylight" between the abstract idea it identifies in the patents-in-suit here and the ineligible ideas embodied by the patents in <u>Alice</u> and <u>Bilski</u>. (<u>Id.</u> at 10-11.) Moreover, many of the claims asserted here depend on claims invalidated by the Delaware district court in

---

[9] The parties identified in the Middle District of Florida one patent that withstood an eligibility challenge and three that have been invalidated under <u>Alice</u>. <u>See, e.g.</u>, <u>StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.</u>, No. 8:13-cv-2240-T-33MAP, 2015 WL 4042097 (M.D. Fla. July 1, 2015) (Covington, J.) (denying a motion for summary judgment based on, among other things, the alleged ineligibility of the patents-in-suit); <u>FairWarning IP, LLC v. Iatric Sys., Inc.</u>, No. 8:14-cv-2685-T-23MAP, 2015 WL 3883958 (M.D. Fla. June 24, 2015) (Merryday, J.) (granting summary judgment of invalidity under § 101); <u>Enpat, Inc. v. Tenrox Inc.</u>, No. 6:13-cv-948-Orl-31KRS, 2015 WL 541673 (M.D. Fla. Feb. 10, 2015) (Presnell, J.) (same); <u>Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.</u>, No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014) (Merryday, J.) (same).

<u>Jack Henry</u>, and, Fidelity argues, those that do not are still drawn to same abstract idea.[10]  (<u>Id.</u> at 11-12, <u>see</u> <u>id.</u> at 12-17.)

Joao Bock points out that eligibility is meant to be a coarse filter of patent applications, not the fine net Fidelity seeks to cast. (Doc. 130 at 24.) Joao Bock counsels against relying on the <u>Jack Henry</u> decision, first because the court there addressed different claims than those asserted here and, second, because the <u>Jack Henry</u> court never articulated a specific abstract idea that the '003 Patent purportedly preempts. (<u>Id.</u> at 25-27.) Joao Bock faults Fidelity's analysis for failing to look at each asserted claim and, as a result, missing key distinctions that make Fidelity's proposed abstract idea a bad fit. (<u>Id.</u> at 27-29.) Joao Bock further contests that the identified abstract idea is truly a fundamental economic practice; rather, Joao Bock contends the systems claimed in the patents-in-suit were novel when they were invented and have only since become the preferred security practice because they solved problems in prior systems by automating the process, disintermediating bank personnel, and empowering the account holder with more convenient access to her account. (<u>Id.</u> at 29-34.)

The Court has reviewed each of the Asserted Claims and determines that they do encompass an abstract idea. In its broadest form, the claims relate to account monitoring and authorization, though Fidelity's narrower formulation also accurately describes the claims. In some of the claims, the abstract idea is embodied by the account holder pre-supplying account limitations to the institution and the institution

---

[10] Fidelity relies on <u>Jack Henry</u> purely for its persuasive power and has not made an argument for the application of collateral estoppel. (<u>See</u> Doc. 160 at 1-2.)

then completing the transaction or not based on those limitations. Other claims involve the account holder receiving notification to approve or deny a transaction or that a transaction has been approved or denied. Still other claims involve some combination of pre-supplied limitation and account holder notification. But they are all directed to the same abstract idea.

In identifying this abstract idea, the Court finds helpful the computer-less hypotheticals the defendant proposed and the court adopted in <u>Jack Henry</u>.[11]  In these hypotheticals, "'Mr. Ashley, a bank teller, is sorting the checks presented that day for payment. An account holder, Ms. Samuels, asks (or has asked) Mr. Ashley to stop payment on her check No. 235 for $75.00. Mr. Ashley locates check 235 for $75.00 and does not pay it.'" 2014 WL 7149400 at 6. A claim-by-claim comparison for claim 3 of the '270 Patent might go as follows:

| '270 Claim Language | Performance without a Computer |
|---|---|
| An apparatus for providing account security, comprising: | |
| a receiver for receiving one of a limitation and a restriction on usage of an electronic money account, | Mr. Ashley. |
| wherein said one of a limitation and a restriction are received from an account holder; | Ms. Samuels speaks to Mr. Ashley, or she gives him a note, and asks that Mr. Ashley stop payment on check No. 235 for $75.00 or that he put a hold order on her account. |

---

[11] As noted earlier, <u>Jack Henry</u> did not involve the '270 Patent. Joao Bock has also been careful to avoid asserting claims in this case that were invalidated in <u>Jack Henry</u>. Still, many of the claims asserted here are dependent upon independent claims invalidated in <u>Jack Henry</u>. The remaining Asserted Claims are susceptible to the same analysis. Thus, the Court tweaks the <u>Jack Henry</u> illustrations to fit the claims asserted here, but only slightly.

| a memory device for storing said one of a limitation and a restriction; and | Mr. Ashley's memory or the bank's written list used for reference regarding holds or stop payment orders. |
|---|---|
| a processor for processing a transaction on the electronic money account in conjunction with said one of a limitation and a restriction; | Mr. Ashley as he sorts checks and recalls and applies stop payments of holds. |
| wherein said processor generates a first signal, and further wherein said first signal contains information for one of approving and disapproving the transaction. | Mr. Ashley determines that he is not to approve payment of the check Ms. Samuels identified. |
| a transmitter for transmitting a notification signal to a communication device associated with the account holder, wherein the communication device is one of a device for receiving said notification signal, a telephone, a beeper, a pager, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a digital communication device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a radio, a car radio, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine. | Mr. Ashley calls or encounters Ms. Samuels. He speaks to her and tells her he found the check and stopped payment of it. |

The hypothetical works for claims in the '003 Patent, as well. For instance, a claim-by-claim comparison with claim 102 of the '003 Patent might go as follows:

| '003 Claim Language | Performance without a Computer |
|---|---|
| A transaction security apparatus, comprising: | |
| a memory device, wherein the memory device stores | Mr. Ashley's memory or the bank's written list used for reference regarding holds or stop payment orders. |
| a limitation or restriction on a use of an account, wherein the account is capable | Mr. Ashley has memorized, or recalls to review, the written list of accounts |

| | |
|---|---|
| of being utilized in transactions involving the purchase of goods and services | having a hold or stop payment order. |
| wherein the limitation or restriction is transmitted from a communication device associated with an individual account holder, and further | Ms. Samuels speaks to Mr. Ashley, or she gives him a note, and asks that Mr. Ashley stop payment on check No. 235 for $75.00 or that he put a hold order on her account. |
| wherein the limitation or restriction is transmitted to a receiver on or over at least one of the Internet and the World Wide Web, | Use of Internet or World Wide Web does not confer patent eligibility. |
| wherein the limitation or restriction is automatically received by the receiver, and further | Mr. Ashley hears Ms. Samuels's request, or reads her note |
| wherein the limitation or restriction is automatically stored in the memory device; and | Mr. Ashley memorizes Ms. Samuels's request or note or writes it onto the bank list of stop payment orders or account hold order. |
| a processing device, | Mr. Ashley. |
| wherein the processing device processes an authorization request for a transaction on the account, wherein the processing device utilizes the limitation or restriction automatically stored in the memory device in processing the authorization request, and | Mr. Ashley notices a check on Ms. Samuels's account that matches the hold or stop payment order of Ms. Samuels. |
| further wherein the processing device generates a signal containing information for authorizing or disallowing the transaction. | Mr. Ashley determines that he is not to approve payment of the check Ms. Samuels identified. |

The Court need not belabor the point and run comparisons of each remaining Asserted Claim, but can say from its review that the remaining claims are substantially similar to these representative claims and are drawn to the same abstract idea. Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (concluding that, after having identified and reviewed representative claims, "[t]he district court . . . correctly determined that

addressing each claim of the asserted patents was unnecessary").

To counter the contention that its claims are directed to an abstract idea, Joao Bock points out that the defendants in its infringement cases cannot seem to agree on a formulation of the idea. (Doc. 130 at 29.) But the various proposals are different only in form, not substance. Joao Bock has not suggested, and this Court does not find, any meaningful distinction between Fidelity's proposed abstract idea of "using account holder notifications or account limits to provide security for financial transactions and accounts" and the ones proposed in Joao Bock's other cases. (See Doc. 130 at 29 (referencing proposals like "issuer transaction confirmation," "asking a payor to approve a transaction," "safeguarding banking transaction by applying predefined restrictions or account limits," or "securing a transaction by comparing a transaction request to a stored limitation.").) As Fidelity correctly argues in its reply, there is nothing in the case law requiring the abstract idea to be susceptible to only one linguistic formulation. (Doc. 137 at 2-3). But c.f. DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014) (noting defendant's difficulty in characterizing the abstract idea as a possible reason for finding the claim patent-eligible). Rather, the Court views these proposals as all reflecting the same patent-ineligible abstract idea encompassed by the patents.

Joao Bock also argues that, because Fidelity's preferred formulation of the abstract idea references both *account* and *transaction* security, it cannot apply to both the asserted claims from the '270 Patent, which each carry a preamble about account security, and the asserted claims from the '003 Patent, which carry a preamble about

transaction security.[12] (Doc. 130 at 27-28.) But the Court finds any distinction between account security and transaction security illusory in this context. Even if there were a meaningful difference, any potential imprecision in Fidelity's formulation of the abstract idea could easily be solved by simply saying that the '270 Patent encompasses the abstract idea of "using account holder notifications or account limits to provide security for financial *accounts*," while the '003 Patent encompasses the abstract idea of "using account holder notifications or account limits to provide security for financial *transactions*."

Joao Bock makes a similar argument that only some of the Asserted Claims include account holder notifications, so a proposed abstract idea referencing notifications and account limits cannot cover the claims that do not include notifications.[13] (Id. at 27-28.) The Court rejects this argument for the same reasons discussed above.

The Court disagrees with Joao Bock that the patents-in-suit survive the first step of the Mayo/Alice analysis because any abstract idea they might contain is a novel one, not "a fundamental business practice long prevalent in our system of commerce." First, as Fidelity notes, novelty is a matter for the second step of the Mayo/Alice analysis, which will be discussed in short order. Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014); see Alice, 134 S. Ct. at 2355 (quoting Mayo, 132 S. Ct.

---

[12] Fidelity contests that the preambles are limiting and cites to two other courts that have agreed. (Doc. 122 at 9.) The Court accepts Joao Bock's position, however, for purposes of this Order only.

[13] Joao Bock's position seems contrary to its insistence on a claim-by-claim review. (See Doc. 130 at 23.)

at 1294). Second, while Fidelity has not presented any banking or economic textbooks outlining a long history of using account limits and notifications as a means for security, the Court has little difficulty deciding that these "method[s] of organizing human activity" are basic commercial practices.[14] <u>Alice</u>, 134 S. Ct. at 2356-57. Thus, the answer to the first question of the <u>Mayo</u>/<u>Alice</u> framework—"whether the claims at issue are directed to one of those patent-ineligible concepts"—is "yes."

### 3.   **Inventive Concept**

A claim drawn to an abstract idea can still be patent-eligible if it adds an "inventive concept" that transforms the abstract idea into a real invention, and does not just add the words "apply it". <u>Alice</u>, 134 S. Ct. at 2355, 2357. "The introduction of a computer into the claims" is not such a transformative concept where the computer is generic and used conventionally. <u>Id.</u> at 2357-59. Nor is "the use of the Internet . . . sufficient to save otherwise abstract claims from ineligibility under § 101." <u>Ultramercial</u>, 772 F.3d at 716 (citing <u>CyberSource Corp. v. Retail Decisions, Inc.</u>, 654 F.3d 1366, 1370 (Fed. Cir. 2011). An attempt to artificially limit the abstract idea "'to a particular technological environment'" also does not make a claim patent-eligible. <u>Alice</u> at 2358 (quoting <u>Bilski</u>, 561 U.S. at 610-11).

---

[14] In affirming an invalidity judgment, the Federal Circuit in <u>Ultramercial</u> seemed satisfied that the claim at issue there "recites an abstraction—an idea, having no particular concrete or tangible form," without needing to conclude that the idea was "fundamental" or "long prevalent in our system of commerce." 772 F.3d at 715. In <u>buySAFE, Inc. v. Google, Inc.</u>, though, the court did mention the "ancient lineage" of the idea captured by the claims and cite to a historical reference. 765 F.3d 1350, 1355 (Fed. Cir. 2014). Either way, the Court is satisfied that the patents-in-suit here are directed to a concept elementary to banking and finance.

Fidelity contends that the various computer components recited in the claims—like "memory device," "communication device," "receiver," "transmitter," "processing device," "input device," "display device," and "data entry device"—are ordinary components of any generic computer, none of which Joao Bock claims to have invented. (Doc. 124 at 12-18.) Specifying the use of the Internet, the World Wide Web, email, or wireless devices to the certain claims in the '003 Patent add nothing inventive in Fidelity's view. (Id. at 14-17.) Fidelity also does not regard limitations on specific claims to certain types of financial accounts as meaningfully limiting the abstract idea it has identified. (Id. at 13.)

Joao Bock, by contrast, describes the '270 and '003 Patents as providing a "new communications pathway for improving account and transaction monitoring" by eliminating bank employees from the process and giving account holders timely, in some cases real-time, information on their accounts and transactions. (Doc. 130 at 4-5.) According to Joao Bock, this is a "new configuration" of the relationship between account holder and financial institution that solved a specific industry problem in the 1990s. (Id. at 5; 31-33.) Joao Bock further contends that, to the extent the claims might be seen as invoking an abstract idea, they contain sufficient limitations to avoid preempting all applications of the idea, which was the Supreme Court's main fear in Alice. (Id. at 34-37.) One such limitation, Joao Bock says, is the practical reality that the computer elements recited in the claims must be "specialized devices," not just generic computer components. (Id. at 37-40.) Joao Bock urges the Court to remember that what is now conventional in banking and computing was novel at the time Joao

20

Bock claimed to have invented it. (Id. at 38, 40.)

Fidelity disputes that Joao Bock's description of the patents can be found in the actual claims. (Doc. 137 at 4-6.) Fidelity contends, for example, that Joao Bock's references to account holder access "from anywhere at any time" and eliminating involvement of bank employees are not found in the claims. (Id. at 4-5.) Fidelity also reads the claims and the specifications to refer to only generic computer components and charges Joao Bock with relying on unsupported expert testimony to "manufacture" a requirement of "very specific" and "extremely powerful" computers. (Id. at 6-7.) Fidelity instead describes the patents-in-suit as the conventional computer application of an abstract idea that is not patent eligible. (Id.)

The Court agrees with Fidelity and the Jack Henry court that, whether viewed individually or as an ordered combination, the elements of the Asserted Claims add nothing inventive to the abstract idea such that it would grant them patent eligibility under § 101. Joao Bock does not claim to have invented any of the computer components recited in the claims or to have written the "widely known data processing and/or software routines, which are known to those skilled in that art" that the patent specifications propose be run on the processor recited in the Asserted Claims. See, e.g., '270 Patent col. 19 ll. 21-25; '003 Patent, col. 17 ll. 26-30. The Court further agrees with the Jack Henry court that the requirement of specialized computer components created by Joao Bock's expert finds no support in the patents themselves. For instance, the expert contends that the invention requires powerful mainframe computers.[15]

---

[15] Again, Joao Bock does not claim to have invented these powerful computers.

(Doc. 131-1, ¶¶ 136-38.) Such a requirement is nowhere in the patents, however. Instead, both specifications state that "[t]he central processing computer . . . may be a mainframe computer, a mini-computer, a micro-computer, a server computer, such as those utilized in conjunction with on-line services and/or in a network environment, and/or any other suitable computer or computer system." See, e.g., '270 Patent col. 15 ll. 54-58; '300 Patent col. 13 ll. 66-67; col. 14 ll. 1-3. Neither can any of the other specializations claimed by the expert be found in the patents. Instead, the Asserted Claims merely call for the entry, receipt, transmission, storing, processing, and display of data, the typical functions of computers, not the specialized functions that Joao Bock's expert reads into them. Thus, the factual dispute Joao Bock identifies regarding what was conventional in computers in 1996 turns out to be a straw man, since the dispute only exists if one accepts that the "powerful" computers described by Joao Bock's expert are actually recited in the patents.

The Asserted Claims' use of computers distinguishes them from the claims deemed eligible in DDR Holdings. There, the claims presented a solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." DDR Holdings, 773 F.3d at 1257. By contrast, the kinds of specific limitations Joao Bock identifies in the patents—like real-time communication and eliminating bank employees from the process—demonstrate that the Asserted Claims employ computers only for their most basic functions—speed and automation—in performing tasks that Joao Bock elsewhere concedes could be

performed even without computers.[16] But "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n, No. 2014-1506, 2015 WL 4068798, at *3 (Fed. Cir. July 6, 2015). The recitation of computers in the Asserted Claims adds nothing beyond the direction to use a computer to provide account limits and notifications. [17] Given the ubiquity of computers, finding the Asserted Claims valid would allow Joao Bock a patent (or two) over an entire abstract idea.

Before the July 24 hearing, the Court asked the parties to review and be prepared to discuss the Federal Circuit's recent decision in Intellectual Ventures. The discussion during the hearing confirmed that that decision fits this case well. In Intellectual Ventures, the Federal Circuit affirmed the district court's determination that two patents were directed to ineligible subject matter, including a method patent that essentially patented the concept of budgeting, whereby a user could set limits on financial transactions with her bank and receive an Internet or telephone notification of her transaction data when she hit the pre-set limits. 2015 WL 4068798 at *3. The Federal Circuit found that idea to be in keeping with the abstract ideas deemed

---

[16] Joao Bock makes this concession while attempting to show that its patents do not preempt the entire abstract idea because performing the same tasks by hand, in person, or over the phone would not infringe. (Doc. 130 at 36-37.) The Court agrees with the Jack Henry court that "this argument turns the analysis on its head." Jack Henry, 2014 WL 7149400 at *8.

[17] Further adding the Internet or the World Wide Web in the way recited in the '003 Patent does not add any novel, inventive component. Ultramercial, 772 F.3d at 716-17.

ineligible in <u>Alice</u> and <u>Bilski</u> and in prior Federal Circuit cases. <u>Id.</u> The claim elements—a database, a user profile, and a communications medium—were all generic computer properties performing generic computer tasks that added "no inventive concept." <u>Id.</u> at *4. Instead, the basic concept of the patent could be done with pencil and paper and a simple notification device. <u>Id.</u> at *4. The Asserted Claims bear a striking resemblance to those invalidated in <u>Intellectual Ventures</u> and are invalid for the same reasons.

The Court attributes no significance (other than strategy) to the fact that Joao Bock asserts only so-called "apparatus" (or "system" or "machine") claims here, and no "method" claims. The Supreme Court in <u>Alice</u> was perfectly willing to invalidate system claims that, like those in this case, were no different in substance from the invalid method claims, but merely recited generic computer components configured to implement the abstract idea. <u>Alice</u>, 134 S. Ct. at 2360; <u>see</u> <u>DDR Holdings</u>, 773 F.3d at 1257 n.4. One need only compare claim 1 (apparatus) and claim 9 (method) of the '270 Patent to see how purposeful drafting can turn a method claim into an apparatus claim.[18] The only difference between the nearly-identical claims is that the apparatus claim adds nouns (e.g., "*a receiver for* receiving," "*a processor for* processing") to the verbs used in the method claim (e.g., "receiving," "processing"). '270 Patent col. 71 ll. 2-15; col. 72 ll. 9-21. The Supreme Court "has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." <u>Alice</u>, 134 S. Ct. at 2360 (quotations omitted). To find the Asserted Claims patent eligible solely

---

[18]  Claim 1 is not directly asserted, but claim 3 is and depends on claim 1.

because they are nominally apparatus, not method, claims would be to ignore this warning. The Court finds that the Asserted Claims are invalid as being drawn to patent-ineligible subject matter under 35 U.S.C. § 101.

In light of this holding, the Court does not reach Fidelity's other arguments on validity, which in turn renders moot Joao Bock's motion to strike (Doc. 129) certain exhibits Fidelity submitted in support of those arguments. Further, since "invalid claims cannot give rise to liability for infringement," Fidelity is entitled to judgment in its favor on infringement, as well. Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1320 (Fed. Cir. 2009) (quotations omitted).

## III.   FIDELITY'S MOTION FOR SANCTIONS

Though the Court finds that the Asserted Claims are invalid, an award of sanctions is a different (shorter) story. Among other things, Fidelity contends that Jack Henry should have prompted Joao Bock to reevaluate its claims here and that its continued prosecution of this case warrants sanctions.[19] Joao Bock responds that Jack Henry is on appeal to the Federal Circuit and, in any event, did not involve the '270 Patent at all or any of the claims from the '003 Patent asserted here.

The Court has previously expressed concern over the gamesmanship frequently displayed by Joao Bock, but has not gone so far as to enter sanctions. It declines to enter sanctions now either. The Jack Henry opinion is persuasive authority here, and a number of the Asserted Claims depend on claims invalidated in Jack Henry. But the

---

[19] Fidelity's other arguments on sanctions deal mostly with developments in other cases that relate to its prior art arguments, which the Court does not reach.

Court is not convinced that Joao Bock deserves to be sanctioned when these claims had never been found ineligible before and the ruling finding them ineligible is on appeal. Any concerns the Court may have about Joao Bock's decision to proceed do not rise to the level of imposing sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or the Court's inherent authority. Fidelity's motion for sanctions is therefore due to be denied.

Accordingly, it is hereby

**ORDERED:**

1.      Joao Bock's <u>ore tenus</u> motion to stay this case pending resolution of its appeal in <u>Jack Henry</u> is **DENIED**.

2.      Defendant Fidelity National Information Services, Inc.'s Motion for Summary Judgment of Invalidity (Doc. 124) is **GRANTED in part** and **MOOT in part**.

3.      Plaintiff's Motion to Strike Evidence Offered in Support of Defendant's Motion for Summary Judgment (Doc. 129) is **MOOT**.

4.      Defendant Fidelity National Information Services, Inc.'s Motion for Sanctions (Doc. 134) is **DENIED**.

5.      The Court will enter judgment consistent with this Order.

**DONE AND ORDERED** at Jacksonville, Florida the 10th day of August, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

bjb
Copies to:

Counsel of record

Attachment: Appendix of Asserted Claims